Exhibit 1

Filed
D.C. Superior Court
12/07/2021 09:29AM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Civil Division

| | |
|---|---|
| JESSICA CHAMPAGNE<br>1303 Ellison Street, N.W.<br>Washington, DC 20011<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.<br>1455 Market Street, 4th Floor<br>San Francisco, CA 94103<br><br>Serve:  CT Corporation System<br>          1015 15th Street, N.W.<br>          Suite 1000<br>          Washington, DC 20005<br><br>and<br><br>GABRIEL TAZA ASABA LEKELEFAC<br>a/k/a GABRIEL TAZA<br>109 Enchanted Hills Road<br>#301<br>Owings Mills, MD 21117<br><br>and<br><br>RASIER, LLC<br>1455 Market Street<br>#400<br>San Francisco, CA 94103<br><br>Serve:  CT Corporation System<br>          1015 15th Street, N.W.<br>          Suite 1000<br>          Washington, DC 20005 | :<br>:<br>:<br>:<br>:<br>:   Civil Action No.  2021 CA 004581 V<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

| | |
|---|---|
| and | : |
| | |
| RASIER – CA, LLC | : |
| 1455 Market Street | |
| #400 | : |
| San Francisco, CA 94103 | |
| | : |
| Serve:  CT Corporation System | |
| 1015 15th Street, N.W. | : |
| Suite 1000 | |
| Washington, DC 20005 | : |
| and | |
| | : |
| RASIER – DC, LLC | |
| 1455 Market Street | : |
| #400 | |
| San Francisco, CA 94103 | : |
| | |
| Serve:  CT Corporation System | : |
| 1015 15th Street, N.W. | |
| Suite 1000 | : |
| Washington, DC 20005 | |
| | : |
| Defendants. | |
| | : |

## COMPLAINT FOR DAMAGES
(Negligence and Negligence *Per Se*; *Respondeat Superior*; Negligent Hiring/Training/Supervision)

COMES NOW Plaintiff, Jessica Champagne, and respectfully moves for judgment against Defendants Uber Technologies, Inc. ("Uber"), Gabriel Taza Asaba Lekelefac, a/k/a Gabriel Taza, Rasier, LLC, Rasier-CA, LLC, and Rasier-DC, LLC on the grounds and in the amount set forth below:

- 2 -

1.  Jurisdiction and venue are proper pursuant to D.C. Code §11-921(a)(6) and 13-423(a)(3) because the wrongful and negligent acts and/or omissions committed by Defendants occurred in the District of Columbia.

## PARTIES

2.  Plaintiff, Jessica Champagne, is an adult citizen and resident of the District of Columbia.

3.  Upon information and belief, Defendant Uber Technologies, Inc. is a company licensed to operate in the District of Columbia and conducts such business in the District of Columbia.

4.  Upon information and belief, Defendant Rasier, LLC is a business entity licensed to operate in the District of Columbia and conducts such business in the District of Columbia.

5.  Upon information and belief, Defendant Rasier-CA, LLC is a business entity licensed to operate in the District of Columbia and conducts such business in the District of Columbia.

6.  Upon information and belief, Defendant Rasier-DC, LLC is a business entity licensed to operate in the District of Columbia and conducts such business in the District of Columbia.  Hereinafter, Defendants Raiser, LLC, Rasier-CA, LLC and Rasier DC shall collectively be referred to as Defendant Raiser.

7.  Upon information and belief, Defendant Gabriel Taza Asaba Lekelefac, a/k/a Gabriel Taza, is an adult resident of the state of Maryland.  At the time of the

incident, Defendant Gabriel Taza Asaba Lekelefac, a/k/a Gabriel Taza, was an employee, agent and/or servant of Defendant Uber and/or Defendant Raiser, and was acting with the course and scope of his employment.

### FACTS: UBER

8. Uber is a car service that provides drivers to customers on demand through a cell phone application, or "app," in cities around the world.

9. The Uber app is free to download and install on a smartphone.

10. Through several forms of media, Uber represents to passengers and to the public that it subjects its drivers to rigorous screening procedures prior to allowing them to drive for Uber. Uber states that drivers must clear several screenings. Uber also represents to consumers that it continues to monitor the quality of its drivers on an ongoing basis through a rating system.

11. Uber makes money by selling rides—a passenger requests an Uber driver through the Uber app, Uber sends a driver to the passenger, the passenger is transported to her destination, and the passenger pays Uber by credit card.

12. Uber dictates and collects the fares that passengers pay for rides; then, it pays its drivers a portion of the fares collected, and it keeps the remainder for itself.

13. Uber drivers are not allowed to collect any form of payment from passengers; rather, Uber drivers receive payment for their work directly from Uber.

14. In order to drive for Uber, drivers must use a GPS-enabled map function that Uber builds into its app. Among other things, this map function does the following:

    a. Shows Uber drivers real-time "heat maps" of where demand for rides is highest at a given time;

    b. Shows Uber drivers the starting points of their assigned rides;

    c. Shows Uber drivers the destinations of their assigned rides;

    d. Directs Uber drivers, via turn-by-turn GPS directions, on the route to follow in order to pick up their assigned rides; and

    e. Directs Uber drivers, via turn-by-turn GPS directions, on the route to follow from pickup to destination.

15. Uber requires that Uber drivers further actively engage with its app while driving in order to accept or decline additional assigned rides—even going so far as to routinely ping Uber drivers with new assigned rides as they are nearing the end of a first passenger's ride.

16. Uber drivers do not have the authority to retroactively adjust a fare upwards or downwards; in order to adjust a fare, they must request that Uber do so at its discretion.

17. If Uber's technology malfunctions, Uber drivers do not have the authority to accept cash from passengers; rather, they must ask Uber for reimbursement.

18. Upon threat of termination, Uber subjects its drivers to a host of specific requirements concerning the performance of their driving duties. In the District of Columbia, these include, among others, the following:

    f. Drivers must drive four-door vehicles no more than 10 years old;

    g. Drivers must display the Uber logo on their vehicles;

    h. Drivers must remove from the vehicle any non-Uber corporate branding;

    i. Drivers must maintain their vehicles in "good" mechanical condition, with "no cosmetic damage" at all;

    j. Drivers must maintain their cars in an acceptably clean condition;

    k. Drivers must adhere to Uber's rules regarding tipping, to wit, by declining a first offer from a customer, although they may accept a second offer;

    l. Drivers must respond to ride requests within a timeframe that is acceptable to Uber;

    m. Drivers must maintain a ride request acceptance rate that is acceptable to Uber;

    n. Drivers must maintain a passenger review rating (a "star rating") that is acceptable to Uber; and

    o. Drivers must not call passengers who have requested a ride with a frequency that Uber determines is "excessive."

## FACTS: COLLISION

19. On December 20, 2018, at approximately 5:11 p.m., Plaintiff was operating her bicycle northbound in the right lane of 14th Street, N.W., in Washington, DC.

20. The Uber driver, Defendant Gabriel Taza Asaba Lekelefac, a/k/a Gabriel Taza, was traveling south in the 1600 block of 14th Street, N.W., Washington, DC, when he attempted to make a left turn onto Corcoran Street, violently striking Ms. Champagne and her bicycle.

21. Defendant Gabriel Taza Asaba Lekelefac, a/k/a Gabriel Taza was issued a citation by the DC Metropolitan Police Department for failure to give full time and attention while operating a vehicle.

22. At the time of the incident, Defendant Gabriel Taza Asaba Lekelefac, a/k/a Gabriel Taza was operating the Uber vehicle in the course and scope of his employment with Defendant Uber and/or Defendant Raiser.

23. As a result of the collision, Plaintiff has suffered permanent injuries as a result of the Uber driver's recklessness. Ms. Champagne has been diagnosed with several harms, including but not excluding, right tibial plateau fracture requiring an open reduction and internal fixation, abrasions, contusions, and other orthopedic injuries, some or all of which are permanent in nature.

## COUNT I
**(Automobile Collision-Negligence and Negligence *Per Se*—All Defendants)**

24. Plaintiff incorporates by reference paragraphs 1 through 23 as if fully set forth herein.

25. Plaintiff alleges that at all relevant times herein, Defendant Gabriel Taza Asaba Lekelefac, a/k/a Gabriel Taza owed Plaintiff a duty to her to operate his vehicle with reasonable care and in a safe, prudent, and appropriate manner consistent with motor vehicle safety and traffic laws then and there in existence.

26. Plaintiff further alleges that at all relevant times Defendant Gabriel Taza Asaba Lekelefac, a/k/a Gabriel Taza breached the duties owed as set forth in the preceding paragraph.

27. Plaintiff alleges that Defendant Gabriel Taza Asaba Lekelefac's, a/k/a Gabrieal Taza's breaches of the duties owed to Plaintiff include but are not limited to the following:

    a.    failure to pay full time and attention to the operation of his motor vehicle;

    b.    failing to maintain proper control of the vehicle;

    c.    failing to operate the vehicle with the degree of skill and care required under the circumstances;

    d.    driving recklessly; and,

    e.    in otherwise failure to adhere to the applicable traffic and safety laws then and there in effect.

28. Plaintiff further alleges that Defendant Gabriel Taza Asaba Lekelefac, a/k/a Gabriel Taza violated traffic safety provisions which were in full force and effect in the District of Columbia at the time of the incident.

29. By violating applicable District of Columbia safety regulations, including regulations designed to protect passengers and other drivers, Defendant Gabriel Taza Asaba Lekelefac, a/k/a Gabriel Taza was negligent *per se*.

30. In particular, Plaintiff alleges that Defendant was negligent *per se* in violating various provisions of the District of Columbia Municipal Regulations, including but not limited to Title 18, Section 2201.

31. Plaintiff further alleges that as a direct and proximate result of the negligence and wrongdoing of Defendant Gabriel Taza Asaba Lekelefac, a/k/a Gabriel Taza, Plaintiff has sustained severe and permanent injuries, including, without limitation, leg fractures, abrasions, contusions, and other orthopedic injuries, some or all of which are permanent in nature.

32. Plaintiff further alleges that as a direct and proximate result of the negligent and wrongful act and/or omissions of Defendant Gabriel Taza Asaba Lekelefac, a/k/a Gabriel Taza, Plaintiff has incurred, and will continue to incur, substantial medical expenses; has incurred, and will continue to incur, substantial wage losses; and has suffered, and will continue to suffer, extreme physical and emotional pain, suffering, and anguish, as well as other damages.

33. Defendant Gabriel Taza Asaba Lekelefac's, a/k/a Gabriel Taza's negligent acts and/or omissions were committed while he was acting as an employee and/or agent of Defendant Uber and/or Defendant Rasier.

34. Defendant Uber and Defendant Rasier are responsible pursuant to *respondeat superior* for the negligent acts and/or omissions of Defendant Gabriel Taza Asaba Lekelefac, a/k/a Gabriel Taza.

WHEREFORE, Plaintiff Jessica Champagne demands judgment against Defendant De Gabriel Taza Asaba Lekelefac, a/k/a Gabriel Taza, Defendant Uber and Defendant Rasier, jointly and severally, in the full and just amount of Two Million Dollars, ($2,000,000.00) plus interest and costs.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all of the above claims.

Respectfully submitted,

REGAN ZAMBRI LONG

By: */s/ Paul Cornoni*
    Paul Cornoni     #489398
    pcornoni@reganfirm.com
    1919 M Street NW, Suite 350
    Washington, DC 20036
    PH: (202) 463-3030
    Fx: (202) 463-0667
    *Counsel for Plaintiff*